NUMBER 13-03-600-CR

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

CLEVELAND BURNETT,                                             Appellant,

 

                                           v.

 

THE
STATE OF TEXAS,                                              Appellee.

 

 

 

                  On appeal from the 148th
District Court

                           of Nueces
County, Texas.

 

 

 

                     MEMORANDUM OPINION[1]

 

                   Before
Justices Rodriguez, Castillo, and Garza

                  Memorandum Opinion by Justice Castillo

 








A jury convicted appellant, Cleveland Burnett, of
aggravated robbery[2]
and assessed punishment at ten years in the Texas Department of Criminal
Justice-Institutional Division.  By one
issue, Burnett asserts that the trial court reversibly erred by denying his
motion for directed verdict because the State failed to corroborate the
accomplice witness testimony.  We affirm.

I.  BACKGROUND








At approximately 2:20 a.m. on March 8, 2002, Jason
Leal parked his vehicle in front of his parents' home.  As he exited his vehicle, he saw three men
approaching him.  Wearing dark clothing,
each had their T-shirts pulled over their nose and mouth.  One man said, "Freeze,
[expletive]."  Leal heard a gun
cocked and looked down to avoid eye contact. 
The three men surrounded him.  One
assailant held the gun to Leal's head, while another demanded money.  Leal showed the assailants that he had no
money.  Leal testified that the man
wielding the gun, later identified as Burnett, 
was wearing shorts and a dark blue shirt.  The assailant demanding money, later
identified as Robert Speed, was wearing wind pants and a hooded
sweatshirt.  Speed took Leal's keys and
watch, and walked away with Burnett.  The
third assailant struck Leal, almost knocking him to the ground.  Leal observed the men leave in a gray-colored
vehicle.  Leal's mother called police and
Leal provided a description of the suspect vehicle.  Leal's sister called police again when no one
arrived at the residence to investigate. 
Leal learned that police were in pursuit of the suspect vehicle.  Approximately thirty minutes later, police
officer Kevin Bowls took Leal to one of two apartment complexes where Burnett
and Speed were apprehended.  Bowls
testified that Leal told him en route that the man who wielded the gun was
wearing blue shorts.  As officer Bowls
and Leal reached the apartment complex, without prompting, Leal immediately
recognized the vehicle as the one the suspects occupied.  At the complex, Leal identified Burnett as
"the guy who pointed the gun." 
Burnett was wearing blue shorts but, according to Leal, a different
shirt.  Leal identified Speed as the
assailant who demanded money.  Speed was
wearing long wind pants and a hooded sweatshirt.

Numerous officers testified about the high-speed
pursuit of the suspect vehicle and apprehension of Speed and Burnett.[3]  The jury heard that, during the pursuit,
persons in the suspect vehicle threw items out the window.   Leal's keys and watch were located in the
back seat of the suspects' car.  Various
officers testified that Leal unequivocally identified Burnett as the person who
held the gun to his head.  Speed, the
driver, pleaded guilty to robbery pursuant to a plea agreement.  The State called Speed to testify against
Burnett.  Speed testified that Burnett
cocked the gun and pointed it at Leal. 
Burnett testified on his own behalf. 
He denied culpability, stating that he was in the vehicle but was asleep
until the police pursuit began.  He
admitted he was in the vehicle from the time Speed picked him up to the time
police began pursuit.  Burnett admitted
he fled from police.  








II.  DENIAL OF
BURNETT'S MOTION FOR DIRECTED VERDICT

In his sole issue, Burnett asserts that the trial
court erroneously denied his motion for directed verdict at the close of the
State's case-in-chief.  Excluding Speed's
testimony, Burnett contends the State did not produce evidence that Burnett was
the person with the gun.  Burnett argues
that Speed's testimony was not corroborated. The State replies that other
non-accomplice testimony sufficiently corroborated Speed's testimony to
implicate Burnett in the crime.  

                                           A.  Standard of Review








A challenge on appeal
to the denial of a motion for directed verdict is a challenge to the legal
sufficiency of the evidence.  Williams
v. State, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996).  A
legal-sufficiency challenge calls on us to review the relevant evidence in the
light most favorable to the verdict.  Jackson
v. Virginia, 443 U.S. 307, 319 (1979); Swearingen v. State, 101
S.W.3d 89, 95 (Tex. Crim. App. 2003).  We
consider all the evidence that sustains the conviction, whether properly or
improperly admitted.  Conner v. State,
67 S.W.3d 192, 197 (Tex. Crim. App. 2001) (citing Garcia v. State,
919 S.W.2d 370, 378 (Tex. Crim. App. 1994)).  Similarly,
we consider all the evidence that sustains the conviction, whether submitted by
the prosecution or the defense, in determining the legal sufficiency of the
evidence.  Cook v. State,
858 S.W.2d 467, 470 (Tex. Crim. App. 1993).  The legal sufficiency of the evidence is
measured against the elements of the offense as defined by a hypothetically
correct jury charge for the case.  Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997).[4]  This standard of legal sufficiency ensures
that a judgment of acquittal is reserved for those situations in which there is
an actual failure in the State's proof of the crime rather than a mere error in
the jury charge submitted.  Id.  We then determine if any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson, 443 U.S. at
319.








A hypothetically
correct charge is one that accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the State's burden of proof or
restrict its theories of liability, and adequately describes the particular
offense for which the defendant was tried. 
Malik, 953 S.W.2d at 240.  With sufficient evidence of Burnett's participation
in the commission of aggravated robbery, the 
indictment supported a jury instruction on the law of parties without a
parties allegation in the indictment.[5]  See Goff
v. State, 931 S.W.2d 537, 544 n.5 (Tex. Crim. App. 1996) (en banc).  In determining whether an accused participated as
a party in an offense, a fact finder may examine the events occurring before,
during, and after the commission of the offense and rely on actions of the
accused that show an understanding and common design to commit the
offense.  Hanson v. State, 55
S.W.3d 681, 690 (Tex. App.BAustin 2001, pet.
ref'd).  Thus, conviction was authorized
under the evidence in this case if a rational jury could find that Burnett
participated either as a principal or as a party.  See id.  

                          B.  Corroboration of Accomplice Testimony

An accomplice is a
person who participates in an offense before, during, or after its commission
to the extent that the person can be charged with the offense or with a lesser
offense.  Herron v. State, 86
S.W.3d 621, 631 (Tex. Crim. App. 2002) (en banc) (citing Blake v. State,
971 S.W.2d 451, 454‑55 (Tex. Crim. App. 1998) (en banc)).  A prosecution witness indicted for the same
offense as the accused is an accomplice as a matter of law.  Id. (citing Ex parte Zepeda,
819 S.W.2d 874, 876 (Tex. Crim. App. 1991) (en banc) (per curiam)). 

As an accomplice, Speed's testimony must be
"corroborated by other evidence tending to connect the defendant with the
offense committed; and the corroboration is not sufficient if it merely shows
the commission of the offense."  Tex. Code Crim. Proc. Ann. art. 38.14
(Vernon 2005).  We look for corroboration
to all non-accomplice evidence, both prosecution and defense.  Cook, 858 S.W.2d at 470.  The required corroborative evidence may be
either circumstantial or direct, and need not directly link the accused to the
crime.  Richardson v. State, 879
S.W.2d 874, 880 (Tex. Crim. App. 1993) (en banc); Reed v. State, 744
S.W.2d 112, 126 (Tex. Crim. App. 1988) (en banc).  Further, the corroborating evidence need not
establish guilt beyond a reasonable doubt. 
Id.  








Finally, "proof that the accused was at or near
the scene of the crime at or about the time of its commission, when coupled
with other suspicious circumstances, may tend to connect the accused to the
crime so as to furnish sufficient corroboration to support a
conviction."  Brown v. State,
672 S.W.2d 487, 489 (Tex. Crim. App. 1984) (en banc).  Apparently insignificant incriminating
circumstances may afford satisfactory corroboration.  Munoz v. State, 853 S.W.2d 558,
559 (Tex. Crim. App. 1993) (en banc). 
Evidence that an accused was in the company of the accomplice at or near
the time or place of a crime is proper corroborating evidence to support a
conviction.  Hernandez v. State,
939 S.W.2d 173, 178 (Tex. Crim. App. 1997) (en banc).  

                                            C.  Inferences of Guilt

Evidence of flight is admissible as a circumstance
from which a jury may draw an inference of guilt.  Bigby v. State, 892 S.W.2d 864, 883
(Tex. Crim. App. 1994), overruled in part on other grounds, Tennard
v. Dretke, __ U.S. __, 2004 U.S. LEXIS 4575 (2004); see Hernandez v.
State, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997) (en banc); Cockrum v.
State, 758 S.W.2d 577, 582 (Tex. Crim. App. 1997) (en banc).

D.  Identity








Burnett's argument on
appeal focuses on the question of identity. 
Speed testified that Burnett and two other men participated in the
offense.  Speed identified Burnett as the
sole person, of the four, with the gun and the sole person wearing shorts at
the time of the offense.  Burnett points
out that police officers and Burnett testified Burnett was wearing a blue and
white checkered shirt when apprehended approximately thirty minutes after the
offense.  Burnett emphasizes that Speed's
testimony that four persons were involved, along with the disparity in the
clothing Burnett wore, render the evidence insufficient to prove identity.  

Burnett's own
testimony places him in the vehicle at the scene of the offense.  We must consider this evidence in determining
the legal sufficiency of the evidence, even though Burnett moved for directed
verdict at the close of the State's case-in-chief.  See Cook, 858 S.W.2d at 470.  The rest of the non-accomplice testimony
corroborated Speed's testimony.  At the
apartment complex after Burnett's apprehension, Leal identified Burnett
unequivocally as the person wielding the gun to his head.  When making the identification at the scene,
Leal pointed out that Burnett "wore a different shirt" during the
offense.








Leal gave a
description to authorities immediately after the incident.  He unequivocally identified Burnett
approximately thirty minutes later.  The
defense  cross-examined Leal and Speed at
length about Burnett's involvement. 
Accordingly, we conclude that Speed's testimony implicating Burnett as a
principal in the aggravated robbery of Leal is amply corroborated.  See
Hernandez, 939 S.W.2d at 178; see
also Munoz, 853 S.W.2d at 559; Brown, 672 S.W.2d
at 489.  We further conclude
that the jury could have inferred that Burnett's actions before, during, and
after the aggravated robbery showed an understanding of the offense as a
party.  See Hanson, 55 S.W.3d at 690. 
Finally, the jury heard that Burnett fled to escape apprehension.  We conclude
that the jury could have inferred Burnett's consciousness of guilt from his
efforts to avoid apprehension immediately after the offense.  See Bigby, 892 S.W.2d at 883; see
also Cockrum, 758 S.W.2d at 582. 


Considering only the
evidence in favor of the verdict, both prosecution and defense, and applying
the evidence to a hypothetically correct jury charge on aggravated robbery and
the law of parties, we find that any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  See Jackson, 443 U.S. at 319.  Accordingly, we conclude that the trial court
did not err in overruling Burnett's motion for directed verdict.  We overrule his sole issue.  

IV.  CONCLUSION

We affirm the trial court's
judgment.  

 

 

ERRLINDA CASTILLO

Justice

Do not publish.

Tex. R. App. P. 47.2(b).

 

Memorandum Opinion delivered and filed

this 21st day of July, 2005.  

 

 

 











[1] See Tex. R. App. P. 47.2, 47.4.





[2] See Tex. Pen.
Code Ann. ' 29.03 (Vernon 2003).  





[3] Police officers testified that the
suspects were pursued both by vehicle and on foot.





[4] The hypothetically correct jury
charge would instruct the jury on the elements of aggravated robbery as
follows:  (1) a person (2) commits
robbery as defined in section 29.02 of the penal code, and (3) uses or exhibits
a deadly weapon.  Tex. Pen. Code Ann. ' 29.03 (Vernon 2003). 
A person commits robbery when he (1) in the course of committing theft
as defined in chapter 31 of the penal code, and (2) with the intent to obtain
or maintain control of the property, (3) intentionally, knowingly, or
recklessly causes bodily injury to another or intentionally or knowingly places
another in fear of imminent bodily injury or death.  Id.
' 29.02 (Vernon 2003).  





[5] Burnett does not assert charge
error.